## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MARLON DEWITT WATSON,**

       **Plaintiff,**

       **v.**

**STATE OF MISSOURI, et al.,**

       **Defendants.**

**Case No. 15-9930-JAR-JPO**

## MEMORANDUM AND ORDER

Plaintiff Marlon Watson filed this action *pro se* and *in forma pauperis* alleging federal constitutional and state law tort claims associated with Missouri state administrative child support and health insurance orders entered against him, and subsequent attempts by state agencies and officials to enforce those orders, including through garnishment.  Plaintiff names the following Defendants in this matter: the State of Missouri, the Director of the Missouri Department of Social Services, Family Support Division ("FSD"), Technician Christine Brown, Missouri Department of Legal Services, Hearing Officer Amber L. Daugherty, and Latisha Nichole Knighten.  This case is before the Court on Defendants' Motion to Dismiss (Doc. 6), Plaintiff's Motions for Entry of Judgment by Default (Docs. 8, 9), and Plaintiff's Motion for Judgment on the Pleadings (Doc. 10).  The motions are fully briefed and the Court is prepared to rule.  For the reasons stated below, Plaintiff's motions for judgment are denied and Defendants' motion to dismiss is granted.

## I.      Background

The following facts are alleged in the Complaint and construed in the light most favorable to Plaintiff.  In December 2013, following an administrative hearing, the Missouri

Department of Social Services, Division of Legal Services ("DLS"), issued an administrative

child support order that FSD docketed in the Circuit Court of Jackson County, Missouri, ordering

Plaintiff to provide health insurance and pay child support of $512.00 per month to Defendant

Latisha Knighten for Plaintiff and Knighten's children, O.W. and L.W.  FSD then issued to

Plaintiff's employer an income withholding order to enforce the child support order and an order

to enroll to enforce the health insurance order.

Plaintiff alleges that FSD and Brown submitted false allegations that resulted in the

administrative decisions and therefore garnishment of his wages.  He claims that the state

agencies colluded with Knighten to obtain relief and that false information was provided to

obtain the orders entered against him.  He complains that the hearing officer unfairly found

Knighten's and FSD's version of events more credible than his.  Plaintiff complains further that

Knighten exploited their children to punish him through the administrative process, and that she

withheld the children from him in order to obtain child support benefits.  Plaintiff claims that the

administrative decisions constitute harassment and discrimination, and that they divulged private

information about him.  Plaintiff complains that the administrative orders diminished his parental

role with the children, and defamed him.  Plaintiff complains that the orders infringed upon his

religious liberties.  Plaintiff claims that FSD has no jurisdiction or authority to garnish his wages,

or other property to satisfy child support obligations.  He claims that DLS misrepresented itself

as neutral in trying to negotiate an agreement between himself and Knighten.   Plaintiff claims

that the orders constitute cruel and unusual punishment and excessive fines.  He complains that

the administrative orders unfairly required him to provide medical care for the children, failing to

recognize Knighten's obligations to provide medical care.

Plaintiff seeks damages, orders declaring that the garnishment orders were excessive and vacating or setting aside the administrative decisions complained of, an order restricting the State and its agencies from using his personal data and private medical records, a declaratory judgment that Knighten obtained the administrative orders through fraud, and a declaratory judgment that Plaintiff suffered defamation and loss of property. Plaintiff asks the Court to vacate the payments required by the administrative orders, and vacate the garnishment orders.

## II.      Motions for Clerk's Entry of Default

Plaintiff moves for default against Defendants, pointing to the fact that they have not yet answered the Complaint. Plaintiff is correct that as a general rule, a defendant shall serve an answer within twenty-one days after service of the Complaint.[1] But if the defendant files a motion under Fed. R. Civ. P. 12(b), the defendant need not file a responsive pleading until fourteen days after the Court denies the motion.[2] In this case, Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), which altered the time to file an answer. If the Court denies the motion to dismiss, Defendants must file an Answer within fourteen days of that order. Therefore, the Court denies Plaintiff's motions to enter default for failure to answer within twenty-one days.

## III.     Subject Matter Jurisdiction

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[3] A court lacking jurisdiction must dismiss the

---

[1] Fed. R. Civ. P. 12(a)(1).

[2] Fed. R. Civ. P. 12(a)(4).

[3] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.") (internal citations omitted).

case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[4]  The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[5]  Mere conclusory allegations of jurisdiction are not enough.[6]

Because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis.  The Court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[7]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[8]  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[9]  Liberally construing Plaintiff's filings, his brief in support of the motion for judgment on the pleadings is responsive to Defendants' motion to dismiss.[10]  The Court considers this brief as it decides Defendants' motion to dismiss.

### A.     Basis for Subject Matter Jurisdiction

First, Defendants argue that this Court lacks diversity jurisdiction.  But the Court need not reach this issue because liberally construing the Complaint, the Court has federal question jurisdiction.  Under 28 U.S.C. § 1331, district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  A case "arises

---

[4]*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[5]*Montoya*, 296 F.3d at 955.

[6]*United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[7]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[8]*Id.*

[9]*Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[10]Plaintiff did not file a separate response to the motion to dismiss.

under" federal law where: "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[11]   Plaintiff alleges federal question jurisdiction based on his constitutional challenges to the child custody and insurance order issued by FDS, which the Court liberally construes as arising under 42 U.S.C. § 1983.   Among other claims, Plaintiff asserts that the administrative orders violated his due process rights.   Accordingly, Plaintiff alleges federal question jurisdiction in this matter.

### B.     Eleventh Amendment Immunity

Notwithstanding the presence of a federal question, the State of Missouri and its agencies are entitled to immunity from suit pursuant to the Eleventh Amendment.[12]   The Supreme Court has repeatedly explained that federal jurisdiction over suits against nonconsenting states, even by its own citizens, "was not contemplated by the Constitution."[13]   Eleventh Amendment immunity extends to state agencies as well, regardless of the legal or equitable nature of the relief being sought.[14]   Under the Eleventh Amendment, states are immune from suit unless (1) the state consents to suit, or (2) Congress validly abrogates the states' immunity.[15]   The State of Missouri has not consented to suit under 42 U.S.C. §§ 1983 or 1985, nor has Congress abrogated the states' immunity.[16]   Moreover, a state is not a "person" for purposes of § 1983.[17]

---

[11]*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006).

[12]*Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).

[13]*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans*, 134 U.S. at 15).

[14]*Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574–75 (10th Cir. 1996); *Sanders ex rel. Rayl v. Kan. Dep't of Soc. & Rehab. Servs.*, 317 F. Supp. 2d 1233, 1241 (D. Kan. 2004).

[15]*Seminole Tribe of Fla.*, 517 U.S. at 54-55; *Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002).

[16]*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989); *Nelson*, 295 F.3d at 1096 (citing *Quern v. Jordan*, 440 U.S. 332 (1979)); *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 & n.13 (10th Cir. 1998).

[17]*Will*, 491 U.S. at 64-67; *accord Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001); *McLaughlin v. Bd. of Trustees of State Coll. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000); *Ellis*, 163 F.3d at 1196.

To the extent plaintiff asserts official-capacity claims for declaratory and injunctive relief against the State officials, the bulk of these claims are also barred because they do not fall within the *Ex Parte Young* exception to Eleventh Amendment immunity.  The *Ex Parte Young* doctrine permits suit against state officials for prospective injunctive relief.[18]  Almost all of the declaratory relief sought by Plaintiff involves injunctive relief that is not  permitted under *Ex Parte Young*, because it seeks relief from previously issued state court orders.

### C.    Abstention

Defendants ask the Court to abstain from exercising jurisdiction under the domestic relations exception or the *Younger* abstention doctrine.  "[T]he domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees,"[19] or make a determination that such decree is void.[20]  The Supreme Court has also "acknowledged that it might be appropriate for the federal courts to decline to hear a case involving 'elements of the domestic relationship,' even when divorce, alimony, or child custody is not strictly at issue."[21]  The Tenth Circuit explained:

> The proper inquiry focuses on the type of determination the federal court must make in order to resolve the claim.  If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent, then the domestic relations exception is applicable.[22]

---

[18]209 U.S. 123 (1908); *Will*, 491 U.S. at 71 n.10.

[19]*Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1111 (10th Cir. 2000) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) ("So strong is our deference to state law in this area that we have recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.'").

[20]*Leathers v. Leathers*, No. 08-1213-WEB, 2010 WL 1936137, at *21 (D. Kan. May 13, 2010) (citing *Wigington v. McCarthy*, 124 F.3d 219 (10th Cir. 1997)).

[21]*Elk Grove Unified Sch. Dist.*, 542 U.S. at 13 (quoting *Ankenbrandt*, 504 U.S. at 705).

[22]*Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989).

Although the domestic relations exception is generally considered an exception to diversity jurisdiction, it may also be applied in federal question cases.[23]

Because Plaintiff's requested relief would require this Court to modify or declare void a child support and health insurance decision concerning Plaintiff's minor children—domestic relations matters that traditionally look to state law for their resolution—these claims are outside this Court's jurisdiction.[24]  Plaintiff's federal civil rights claims require this Court to determine issues that are regularly and appropriately decided in state court; accordingly, this Court lacks jurisdiction.

Even if the domestic relations exception did not apply, the Court would abstain in this case under the *Younger* abstention doctrine.  "In the absence of extraordinary circumstances, the *Younger* doctrine directs federal courts to refrain from interfering in ongoing state civil proceedings."[25]  *Younger* abstention "is the exception, not the rule."[26]  In determining whether *Younger* abstention is appropriate, a court considers whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate

---

[23]*Johnson*, 226 F.3d at 1111 & n.4; *see also Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006); *Hunt v. Lamb*, 427 F.3d 725, 726–27 (10th Cir. 2005) (ordering the action be remanded to state court because it could not have been originally brought in federal court as the case revolved around a child custody dispute, even though plaintiff also alleged violations of his civil and constitutional rights); *Oltremari by McDaniel v. Kan. Soc. & Rehabilitative Serv.*, 871 F. Supp. 1331, 1361 (D. Kan. 1994) (noting that domestic relations exception should be applied when plaintiff asks district court to make domestic relations decisions under the guise of civil rights claims).

[24]*See Ex parte Burrus*, 136 U.S. 586, 593–94 (1890) (holding that the possession and custody of the child, as between the father and grandfather, was a matter of domestic relations that belonged to the laws of the states); *Fisher v. Lynch*, No. 07-2154-KHV, 2007 WL 2225943, at *5 (D. Kan. July 31, 2007).

[25]*Ysais v. Children Youth & Family Dep't*, 353 F. App'x 159, 161 (10th Cir. 2009) (citing *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996)).

[26]*Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)).

separately articulated state policies."[27]  "Once these three conditions are met, *Younger* abstention

is non-discretionary and, absent extraordinary circumstances, a district court is required to

abstain."[28]

It appears that the state administrative proceeding challenged by Plaintiff is ongoing.[29]

And the Court finds that the state court provides an adequate forum for Plaintiff's claims—

Missouri courts may consider constitutional challenges to domestic proceedings on appeal.[30]

Finally, the Court finds that the state administrative proceedings concern important state

interests.[31]  The Supreme Court has observed that "[f]amily relations are a traditional area of

state concern,"[32] weighing heavily in favor of abstention.[33]  Furthermore, Plaintiff bears the

burden of showing the state court was an inadequate forum for his federal claims.[34]  "[W]hen a

litigant has not attempted to present his federal claims in related state-court proceedings, a

federal court should assume that state procedures will afford an adequate remedy, in the absence

[27]*Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) (quoting *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (internal quotations omitted)); *see Brown v. Day*, 555 F.3d 882, 887 (10th Cir. 2009).

[28]*Crown Point I*, 319 F.3d at 1215 (citing *Seneca-Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989)).

[29]To the extent these proceedings have concluded, the Court would still be divested of jurisdiction under the *Rooker-Feldman* doctrine, which "prevents federal courts from assuming jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *Lambeth v. Miller*, 363 F. App'x 565, 567 (10th Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

[30]*See Morkel v. Davis*, 513 F. App'x 724, 729 (10th Cir. 2013) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

[31]*See Trendle v. Campbell*, No. , 2011 WL 2899118, at *4 (E.D. Mo. July 19, 2011) ("the State of Missouri has a substantial interest in managing its citizens' domestic relations, has developed a comprehensive scheme for the enforcement of domestic orders and collections relating thereto, and has courts with expertise and experience in applying that scheme . . . .").

[32]*Moore v. Sims*, 442 U.S. 415, 435 (1979); *see also Morrow v. Wilson*, 94 F.3d 1386, 1393 (10th Cir. 1996) (ordering *Younger* abstention when plaintiff sought to enjoin ongoing state adoption proceedings); *Yancey v. Bonner*, 323 F. App'x 674, 676 (10th Cir. 2009).

[33]*Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1267 (D. Kan. 2008) (citing *Morrow*, 94 F.3d at 1393).

[34]*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987).

of unambiguous authority to the contrary."[35]  The Supreme Court has directed that "the federal court should not exert jurisdiction if the plaintiffs 'had an *opportunity* to present their federal claims in the state proceedings.'"[36]  "[A]bstention is appropriate unless state law clearly bars the interposition of the [federal statutory] and constitutional claims."[37]  Plaintiff has not made the necessary showing that the state court is an inadequate forum.

The Court notes that it may decline to abstain under *Younger* when extraordinary circumstances are present, such as "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown."[38]  But Plaintiff's allegations in this case simply do not meet "the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment."[39] There are no allegations in the Amended Complaint that would establish extraordinary circumstances sufficient for the Court to decline to abstain under *Younger*.[40]

### D.    Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction."[41]  The Court considers "the

---

[35]*Id.* at 15.

[36]*Moore*, 442 U.S. at 425 (quoting *Juidice v. Vail*, 430 U.S. 327, 337 (1977)) (emphasis in original).

[37]*J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999) (quoting *Moore*, 442 U.S. at 425–26).

[38]*Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *see Younger v. Harris*, 401 U.S. 37, 54 (1971); *Phelps v. Hamilton*, 59 F.3d 1058, 1066–68 (10th Cir. 1995).

[39]*Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (quoting *Phelps*, 59 F.3d at 1066); *see also Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1165 (10th Cir. 1999).

[40]*See Ysais v. Children Youth & Family Dep't*, 353 F. App'x 159, 160 (10th Cir. 2009) (finding no extraordinary circumstances present where plaintiff alleged misleading evidence was produced, no proper investigation was performed, and defendants engaged in conspiracy to terminate his parental rights); *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1267 (D. Kan. 2008) (finding no extraordinary circumstances).

[41]28 U.S.C. § 1367(c)(3); *see Estate of Harshman v. Jackson Hole Mountain Resort*, 379 F.3d 1161, 1164 (10th Cir. 2004) ("Seeking to vindicate values of economy, convenience, fairness, and comity underlying the

nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction."[42]   In this case, to the extent Plaintiff alleges state law tort claims, they are closely intertwined with domestic relations matters surrounding the child support and garnishment orders.   All of Plaintiff's claims are based on his complaints concerning the state administrative proceedings that resulted in his wages being garnished.   This weighs against the exercise of supplemental jurisdiction over his state law claims.[43]   The Court, therefore, declines to exercise jurisdiction over any remaining state law claims in this matter.

## IV.   Amendment

"[A] pro se litigant bringing suit in forma pauperis is entitled to notice and an opportunity to amend the complaint to overcome any deficiency unless it is clear that no amendment can cure the defect."[44]   Leave need not be granted if amendment would be futile.[45] Based on the foregoing discussion, any possible amendment would be futile.   Therefore, the Court will not grant leave to amend in this case.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motions for Entry of Judgment by Default (Docs. 8, 9) are **denied**.

---

judicially-created doctrine of pendent jurisdiction, Congress granted statutory authority to district courts to hear claims that form 'part of the same case or controversy' as the claims on which original federal jurisdiction is based.").

[42]Anglemyer v. Hamilton Cnty. Hosp., 58 F.3d 533, 541 (10th Cir.1995) (quoting Thatcher Enter. v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)).

[43]Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

[44]Denton v. Hernandez, 504 U.S. 25, 34 (1992).

[45]See Gee v. Pacheco, 627 F.3d 1178, 1195 (10th Cir. 2010); Mountain View Pharmacy v. Abbott Labs., 630 F.2d 1383, 1389 (10th Cir.1980) ("Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted.").

**IT IS FURTHER ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 6) is **granted** and Plaintiff's Motion for Judgment on the Pleadings (Doc. 10) is **denied**. This case is dismissed in its entirety without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: <u>April 6, 2016</u>

           S/ Julie A. Robinson
          JULIE A. ROBINSON
          UNITED STATES DISTRICT JUDGE